Curia, per

Johnston, C.
Perhaps my opinion will be better under, stood by a statement of some circumstances shewing the origin of this cause.
Charleston consists of two parts, The Southern, called the City, has been incorporated. The Northern, called the Neck, is governed by the general laws of the State, modified in a few special instances.
The Neck includes Mazyckborough, Wraggsborough, Cannonbo, rough, &c., parcels which take their names from former owners of the soil.
The land in Wraggsborough originally belonged to John Wragg. On his death, it vested in his distributees — and was afterwards laid out into town lots, intersected by streets, here called cross roads.
Among others, an oblong square, called Wragg-square, was laid out, having Meeting-street along the western end, and Charlotte-street along *150 the southern side of it. Another street runs along its northern side. East of it lies a lot now the site of the second Presbyterian (or Flinn’s) church. It is alledged by some that a street intervenes between the church lot and Wragg-square; others contend that there is no such street, but that what is called a street, is, in fact, part of Wragg-square itself. Which of these statements is correct does not appear, nor does it seem necessary to inquire.
The defendants, being the commissioners of roads for Charleston Neck, put up a railing, beginning at the church lot, and running by the lines of Charlotte street, Meeting-street, and the street North of Wragg-square, back again to the church lot: so' as to enclose Wragg-square, if it bounds on the church lot, and to include with it the street between the square and the church lot, if there be a street there. There are five English gates at intervals along the railing.
For this, an indictment containing two counts was preferred against them. The first alledges the existence of a street between the square and the church lot, and that the railing obstructing it is a public nuisance. The second count is also for a public nuisance in enclosing Wragg-square, whatever its extent be.
The cause was tried before Justice Evans, at May Term, 1834, and the defendants were found guilty on the second count. There was no finding on the first.
The circuit judge reports as follows :
“It appeared from the evidence, that that part of Charleston Neck where the alledged offence was committed, formerly belonged to the heirs of Jphn Wragg; and was laid off, when divided, into lots and streets. On the plats the spot was called Wragg-square. This square, it was contended, had been dedicated by the owners of the land to the public use. There was no doubt it had been so dedicated.
“The second count involved the questions, for what uses had the heirs of Wragg dedicated this square to the public % and whether the commissioners had any right to enclose it 1
“The deed of partition, whereby this dedication was made, was lost or mislaid. To prove its contents, Mr. Manigault and Major Wragg were examined, (particularly the latter,) who said it was the intention of the parties, of whom he was one, to convey it as an open square. He was not questioned as to the intention of the parties, but as to the contents of the deed, and spoke of the intention of the parties, as evidence of what the deed contained.”
The defendants now move for a new trial; and in support of their motion, file the following grounds :
*151 1. That there was not sufficient evidence before the court that the square called "Wragg-square, was public property — so as to warrant an indictment for obstructing it.
“Admitting it to be public property :
“2. That his Honor erred in charging the jury, that either Mr. Manigault or Major Wragg’s evidence, was valid as to their private understanding and intentions, in executing a deed to the public, in conjunction with the numerous other heirs — whereas, it is respectfully submitted, that all they could be legally admitted to prove, was, that such a deed had existed — the loss of it and the contents thereof, that the square had been conveyed as an ‘open square,’ to the public — but no more.
“3. That the very fact of conveying to the public, (supposing it ever to have been so conveyed,) as an ‘open square,’ authorized the commissioners, so long as they did not build on it, but kept it open for public use, to rail it in, as all such squares were proved to be generally done; inasmuch as it was in evidence, not only that it could not be rendered available for the purposes of a square, (as contra-distinguished from a common,) to the public, without such railing ; but that it had been, previous to the erection of the said railing, and would again become (should it be removed,) a public nuisance.
“4. That land, dedicated to the public as a square, is, in contemplation of law, a highway — and the right of determining how it shall be used and laid out as such, 6r railed in, for the public good, is vested by law in the commissioners; and they are not indictable for any use to which they shall devote it, unless such use can be shewn to be inconsistent with the terms of the original grant, contrary to law, or a public nuisance — neither of which has been proved in the present case.
“5. That the right of opening or closing up public roads or highways, and of deciding on the propriety of so doing, is fully vested in the commissioners under the Act of 1810 ; and their decision as to the mode of opening or closing such highways, or as to what manner they shall be used, is conclusive on the point.”
All these grounds apply to the verdict on the second countin the indictment — and to that 1 shall confine myself.
With respect to that ground which excepts to the evidence, my own opinion — and I speak only for myself — is this : 1 suppose the witnesses, in speaking of the intent with which the instrument was executed, were understood to mean that it expressed that intent, and were therefore, in fact, testifying to the contents of the lost paper; but they did not say what intent was expressed by the instrument. This, I think, they should have been *152 required to do ; the real inquiry being, not wbat intention the parties ttf the instrument entertained, but what they expressed in writing.
To come now to the other grounds :
The finding is that the inclosing of Wragg-square', by the defendants,with a railing and gates, is a public nuisance.
A nuisance consists, I think, in the omission or commission of an act whereby others are annoyed and their rights violated ; more briefly, it is the unlawful annoyance of others. There must be an annoyance as well "as a wrong done — otherwise every wrong would be a nuisance.
A violation of right must attend the annoyance, for if the law justifies the act no one has a right to say that he is annoyed by it. I do not mean that a person keeping strictly within his own rights, may safely annoy another ; for it is not lawful so to exercise our own rights as to destroy those of others — but Í mean that if he annoys that other, in a matter to which he can lay no legal claim, the law will not regard it as an offence. I say this, not that it is necessary to the case, but to prevent misconstruction.
The distinction between a public and a private nuisance, is that the for* mer invades the public, the latter private persons ; justice punishes the former by criminal prosecution — she redresses the injury arising from the latter by action.
I will now inquire whether the defendants have been properly convicted of a public nisance. I mean, does tbe evidence show that the defendants have unlawfully annoyed the public in the enjoyment of their rights 1
Whether the act of the defendants violated the rights of the public,must depend on wbat those rights were.
According to the evidence, the square was dedicated for “ an open square.” What does it mean Í What is the use to be made'of an open square %
If there was evidence on the trial to shew what is meant by an open square, it has not been furnished to this court. It was the duty of the State to make out its case against the defendants ; this it has not done, unless it has shewn that the act of the defendants violated the public uses of the square ; and this it could not do without shewing what the uses were ; but of this there was no evidence, so far as I can see. The defendants have therefore been convicted without evidence.
This is the ground, and the only ground, upon which I wish to be understood as relying in opposition to the verdict. This I feel very sure is tenable. There are other views which have struck me with force.
If in the absence of evidence We should be called upon to conclude *153 What were the purposes of the dedication, I would resort to two sources. Although there is no evidence of what the uses were, there is convincing evidence of what they were not; whatever uses were intended, it is clear the square was not dedicated for a highway. There seems to have been a general impression at the trial, that if this square was dedicated as “ an open square,” that gave a right to every citizen of access, at all points, on horseback, and with every description of carriage, as well as on foot, and to traverse it in every direction ; in short, that it was a common highway, in the most extensive sense; and the defendants themselves, yielding to this as incontrovertible, have, in some of their grounds, resorted to their official authority over highways, as a justification of their act. But there is one circumstance which, in my opinion, conclusively establishes that this piece of ground could not have been dedicated to any such purposes.
On three sides of the square, and adjoining it, it is conceded that certain slips of land were dedicated for streets-or highways. Was the square itself, which these streets enclosed, dedicated to the same purposes 1 Then why in the dedication draw a distinction between 'the streets and the square 1 Why not declare the whole to be one street % Or if an open square means a highway, why not include the streets with‘the square, and declare them all one open square 1
Another source to which I would resort, would be known custom. In all the cities of this confederacy the custom as to their public squares, is to enclose and plant them, leaving gates for the access of the citizens. Of this we have instances in the city square of Charleston ; Washington, and other squares, in Philadelphia; the Park and Battery in New-York; and the common in Boston ; besides others. They afford air, prospect, and agreeable walks for the health and recreation of the citizens. These, unless there be contradictory evidence, 1 take to be the purposes of Wragg-squáre.
And here I might concede, that as the square is not a highway,^the defendants, as commissioners of roads, had no official right to interfere with it. They had no jurisdiction over any of the public property, but that specially confided to them by their commission. The Legislature might have extended their authority to it, or they might have created a separate commission for its regulation ; but hitherto they have not committed its superintendence to any officers whomsoever. The defendants must, therefore, answer for their act as for the act of private persons.
But is it a public nuisance, for private persons to take a piece of ground ■in an unincorporated town, dedicated to the public for air, prospect, and walks, but as to which the public have taken no order, and' erect a' railing *154 around it, with gates so as to obstruct neither air nor prospect, or the access of individuals 1 If the rights of the public in Wragg-square are such as I have supposed, the defendants, so far from having deprived them of them, have helped them to them; they have not annoyed them in the exercise of them; on the contrary, they have promoted their enjoyment of them.
The act of the defendants was neither inconsistent with the public rights, nor has the public been, nor can they, without a change of circumstances, be prejudiced by it,
It has been suggested, however, that the public only have a right to declare the points of access for the enjoyment of this property — that they have not done so — and the defendants have done it without authority, and that therefoie their act is unlawful.
Does it follow that the act is a nuisance merely because it is unauthorized I Unless attended with prejudice, to those entitled to enjoy the uses of the square, it is damnum absque injuria.
The want of authority to do an act does not make it unlawful. To be so, it must be a violation of some right.
The right of the public to regulate the means of enjoying the uses here is- one thing; the right to enjoy those uses is another. The defendants have violated neither. They have left the community the full enjoyment of Wragg-square, for all the purposes to which it was dedicated; and as the public have made no regulations, they have violated none ; nor have they taken away their right to regulate.
I. will put a case. Suppose the legislature had established no commissioners or police for highways, but that highways, nevertheless, existed. That a right would exist in the legislature to regulate them, is indubitable ; that it would be an offence for an individual to obstruct them, no one will doubt; but would it be unlawful for him, without authority, to mend them? Would it be an offence for him to do any act on them which did not destroy the use of them 1
If the legislature had appointed commissioners to make regulations here, and the defendants had done an act inconsistent with the regulations, they might be punished for that, according to the nature of their offence. But here, no order could be disobeyed, simply because none ever existed.
If officers had been appointed for the purposes I have supposed, and the defendants had taken their functions into their hands, they might have been punished for the usurpation. But that offence runs very wide of a nuisance — for I apprehend, as the law now stands, it would be no nuisance, for instance, in a citizen to repair a public road.
J. H. Smith and Petigru, for the motion.
Smith, Attorney General, contra.
The defendants have left the community access to the square, which is all they had a right to, in order to the enjoyment of the square itself. They have done more — they have actually prevented the introduction of nuisances upon the square. This does appear to me to put their act far beyond the pale of criminal offences.
But as I said before, 1 rest my opinion that a new trial should be ordered, upon the ground that the rights of the public were not shewn by evidence. It might be that the dedication was of a square to be planted and enclosed entirely, and kept for air and prospect only, without any right of access — in which case the defendants have done less than they might lawfully have done.
It is my opinion that the motion to set the verdiet aside should be granted — and that a new trial should be ordered.
DeSaussure, Gantt, Butler, O’Neall, Richardson, C. and JJ. concurred.